## DE LEON v. WESTERN CASUALTY CO.
### No. 13671.

Court of Civil Appeals of Texas.
Fort Worth.

Feb. 18, 1938.

Frank R. Graves, of Fort Worth, for appellant.

Cantey, Hanger & McMahon and F. T. Denny, all of Fort Worth, for appellee.

SPEER, Justice.

Floyd DeLeon sued Western Casualty Company, in a district court of Tarrant

county, to set aside an award of the Industrial Accident Board, growing out of a hernia injury sustained while in the employ of Armour & Co., in December, 1935.

The petition sets out all necessary requisites to the jurisdiction of the court, in which it is shown that the award from which the appeal was perfected bore date of April 16, 1936. Because of the nature of the appeal before us, it is unnecessary to make further statement now of the full contents of plaintiff's pleadings.

The defendant filed a plea in abatement to plaintiff's alleged cause of action, based upon the ground that the award of the Industrial Accident Board was not a final one, and therefore the district court did not have jurisdiction.

The plea in abatement was sustained by the trial court, and plaintiff has perfected an appeal to this court.

Under article 8306, § 12b, the Workmen's Compensation Act makes hernia one of the special claims enumerated, and contains specific provisions for the manner in which recovery may be had; there is a routine of questions of fact for determination by the Industrial Accident Board before the matter can be reviewed by the courts for such an injury. Among other things, that article provides:

"In all such cases where liability for compensation exists, the association shall provide competent surgical treatment by radical operation. In case the injured employee refuses to submit to the operation, the board shall immediately order a medical examination of such employee by a physician or physicians of its own selection at a time and place to be by them named, at which examination the employee and the association, or either of them, shall have the right to have his or their physician present. The physician or physicians so selected shall make to the board a written report, signed and sworn to, setting forth the facts developed at such examination and giving his or their opinion as to the advisability or non-advisability of an operation. If it be shown to the board by such examination and such report thereof and the expert opinions thereon that the employee has any chronic disease or is otherwise in such physical condition as to render it more than ordinarily unsafe to submit to such operation he shall, if unwilling to submit to the operation, be entitled to compensation for incapacity under the general provisions of this law. If the examination and the written report thereof and the expert opinions thereon then on file before the board do not show to the board the existence of disease or other physical condition rendering the operation more than ordinarily unsafe and the board shall unanimously so find and so reduce its findings to writing and file the same in the case and furnish the employee and the association with a copy of its findings, then if the employee with the knowledge of the result of such examination, such report, such opinions and such findings, thereafter refuses to submit within a reasonable time, which time shall be fixed in the findings of the board, to such operation, he shall be entitled to compensation for incapacity under the general provisions of this law for a period not exceeding one year.

"If the employee submits to the operation and the same is successful, which shall be determined by the board, he shall in addition to the surgical benefits herein provided for be entitled to compensation for twenty-six weeks from the date of the operation. If such operation is not successful and does not result in death, he shall be paid compensation under the general provisions of this law the same as if such operation had not been had; other than in determining the compensation to be paid to the employee, the board may take into consideration any minor benefits that accrued to the employee by reason thereof or any aggravation or increased injury which accrued to him by reason thereof."

Section 12d reads:

"Upon its own motion or upon the application of any person interested showing a change of conditions, mistake, or fraud, the board at any time within the compensation period may review any award or order, ending, diminishing or increasing compensation previously awarded within the maximum and minimum provided in this law, or change or revoke its previous order, sending immediately to the parties a copy of its subsequent order or award. Review under this section shall be only upon notice to the parties interested."

The award of the accident board on its face appears to be final; omitting parts unnecessary for this discussion, it reads:

"On this 16th day of April, 1936, after due notice to all parties, came on to be

considered by Industrial Accident Board claim for compensation by Floyd DeLeon against Western Casualty Company, and board finds and orders:

"On December 12th, 1935, Armour & Co., a subscriber to the Employers' Liability Law with insurance carried by the Western Casualty Company, had 'in its employ Floyd DeLeon whose average weekly wage was $25.15, and compensation rate $15.09 per week under the act. On said date Floyd DeLeon. suffered injury in course of employment resulting in total incapacity for performance of labor for 52 weeks.

"Western Casualty Company is ordered to pay Floyd DeLeon $15.09 per week for 52 consecutive weeks from December 12, 1935, for total incapacity."

After hearing was had by the board, it entered an order on February 26, 1936, finding plaintiff had sustained a hernia while employed by Armour & Co., and that defendant was the insurer; that plaintiff was entitled to compensation of $15.-09. Plaintiff was ordered to submit to an operation by Dr. J. H. McLean, some time between March 8 and March 18, 1936, at a time and place to be designated by Dr. McLean. The compensation was ordered to begin with the date of the operation and to continue for 26 weeks. On March 4, 1936, an order was entered amending the one last referred to, so as to require compensation to begin with the date of the injury.

The defendant advised the board it would furnish the services of Dr. McLean for the operation, but some misunderstanding arose between plaintiff and attorneys for defendant. The plaintiff contending that defendant demanded that plaintiff sign a release of further liability if the operation should prove successful. On March 28, 1936, counsel for plaintiff wrote the board declining the operation at the hands of Dr. McLean and asked the board to make a final award. Thereafter, on April 16, 1936, the award was made, from which the appeal to the district court was taken.

The petition of plaintiff shows that he did, on April 9, 1936, undergo the operation at the hands of another surgeon; this, it will be observed, was prior to the entry of the award from which the appeal was taken.

There is no provision in the statutes, from which we have quoted above, for the board to order an operation at the hands of a surgeon named by it, until the employee has refused the services tendered by the insurer, but we do not consider that the order requiring the operation was ineffective because it named Dr. McLean; yet, when it was declined by plaintiff, it was incumbent upon the board, after refusal by plaintiff, to name a physician to make an examination of plaintiff, with a view to determine if he was afflicted with disease which would render an operation for hernia more than ordinarily unsafe; to require such physician to make a report under oath of his findings, and if the report shows he can be safely operated on, these facts should be made known to plaintiff, and then with full knowledge of the findings, if he refuses the operation, the board would fix his compensation for a period of one year. The examination was not ordered, and, of course, no report and findings were made to the board. If this had been done and plaintiff had submitted to an operation and it had proven successful, the board would have fixed his compensation at 26 weeks, and required the association to pay the reasonable expense of the operation.

As stated before, plaintiff was operated on April 9th, prior to entering the award on April 16th, and when the board was advised of that fact, on April 24th, it notified all parties under date of April 28th that if plaintiff had been operated on the 9th of April, it would entertain an application for a review of the April 16th order.

The record shows plaintiff received the notice of the board last above mentioned on April 30th, and filed this suit on that day.

Under the provisions of the statutes from which we have quoted, the things are set out that must be done by claimant and the board before a final award can be made for such an injury as claimed in this case. The board made the award upon the theory that an operation was necessary, that it was tendered by the association and was refused by plaintiff; the compensation fixed by the award shows to have been based upon this state of facts; but in truth plaintiff was operated on before the award was made, and whether or not the operation was successful was a fact, required by statute, to be determined by the board; the wisdom of such a provision in the law is demonstrated by the fact that if the board finds

the operation to be successful, a different period of time for compensation is provided.

Section 12d of article 8306, supra, provides for a review of the award when it is made to appear that a change of conditions, mistake, or fraud has entered into the making of the order of the board. It appears affirmatively from plaintiff's petition, wherein it is alleged that he had been operated on, at his own expense, that the order or award made by the board on the 16th day of April was based upon a mistake of facts, that is, the board did not know plaintiff had been operated on.

In this suit the court was being called upon to fix plaintiff's compensation under conditions which had not been passed on by the board. The case of Tally v. Texas Employers' Ins. Ass'n, Tex.Com.App., 48 S.W.2d 988, 990, is one in which the converse of the proposition here was discussed, and has been followed and cited with approval by the Supreme Court several times. It was there held that no order or award by the Industrial Accident Board could be appealed from until it became a final disposition of all the fact issues involved under the statutory provisions related to compensation for hernia. As applicable to this case, it was there said:

"It is apparent from these provisions that there can be no final award in a hernia case until the board has definitely and finally fixed the specific compensation which the injured party is entitled to receive. * * * In the very nature of things the board could not, at the time it entered this order, determine what compensation should be finally awarded the claimant, as the amount thereof would be wholly dependent upon certain contingencies. If he was willing to submit to the operation, and the insurer refused to furnish it, he was entitled to be compensated under the general provisions of the law [etc.] * * * Texas Employers' Ins. Ass'n v. Neatherlin, Tex.Com.App., 48 S.W.2d 967. * * * If the operation was performed, the amount of compensation to be awarded would depend upon whether the same was successful or unsuccessful, a fact which, likewise, must be ascertained by the board."

The case from which we have just quoted has been subsequently followed and approved in the following cases: Petroleum Casualty Co. v. Webb, 127 Tex. 91, 92 S.W.2d 236; Texas Emp. Ins. Ass'n v. Marsden, 127 Tex. 84, 92 S.W.2d 237; Tally v. Tex. Emp. Ins. Ass'n, Tex.Sup., 102 S.W.2d 180, 181.

In the last-cited case, Judge Critz, speaking for the Supreme Court, in reviewing a case which had been tried in the district court on appeal from a purported final award of the board, carefully reviewed the statutes and constructions placed thereon. In that case the district court undertook to pass upon some of the questions delegated by statutes to the board. He announced as a definitely settled rule that: "All questions arising under our Workmen's Compensation Law must first be passed on by the Accident Board." And that when there are such questions to be determined by the board, which affect the compensation to be allowed, the courts are without jurisdiction, until they have been considered by the board. Because the court had attempted to pass on questions that were proper and necessary for the board to determine, and had not been done, held the court was without jurisdiction.

■ In the instant case, the award was made by the board under the mistaken belief that plaintiff had not been operated on, when as a matter of fact he had. The board had had no opportunity to determine whether or not the operation was successful, and to fix the compensation upon its findings thereon. Until this has been done, no final award could have been made by the board, and we hold that none was made, although the order appealed from purports on its face to be such.

■ Until a final award is made from which an appeal can be prosecuted to the courts, the accident board retains jurisdiction of the claim, and the plaintiff must pursue his remedy there until all necessary requisites have been attained, before resorting to the courts. Tally v. Texas Employers Ins. Ass'n, supra.

In view of the necessity for further proceedings before the accident board, before the courts can hear and determine this matter, it will not be amiss to say that plaintiff's petition raises an issue of an amended claim before the board for injuries, in addition to that of hernia, as well also seeks to recover for medical attention growing out of the operation. These are matters that may be amplified

in such way as plaintiff may desire, in subsequent proceedings before the board.

The trial court properly sustained the plea in abatement and refused to take jurisdiction of this case. But nothing we have said herein shall be taken to mean that plaintiff's rights are in any way prejudiced so as to preclude him from procuring from the accident board such relief as he may show himself entitled to there. With these conditions, the judgment of the trial court is affirmed.